UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TIMOTHY MERLE WOLF, JR.,       )
                                      )
        Plaintiff,             )
                                        )
     v.                       )      No. 4:20-CV-458 SPM
                                        )
ST. CHARLES COUNTY, et al.,       )
                                        )
        Defendants.       )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Timothy Merle Wolf, Jr., (registration no. 1132446), an inmate currently incarcerated at Algoa Correctional Center, for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $33.67. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $168.39.  Plaintiff has insufficient funds to pay the entire filing fee.  Accordingly, the Court will assess an initial partial filing fee of $33.67.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009).  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with

alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Complaint and Supplements to the Complaint

Plaintiff, Timothy Merle Wolf, Jr., brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. He names the following individuals and entities as defendants in this action: St. Charles County; Nicholas Martin (St. Charles County Police Officer, Fugitive Unit); Darren Baker (St. Charles County Police Officer, Fugitive Unit); Mikki Morris (Detective, St. Charles County Sheriff's Department); Unknown Prosecutor; and Various Unknown Employees.[1] Plaintiff brings this action against defendants in their official capacities only.

Plaintiff asserts that he was arrested on or about March 16, 2017, in St. Charles, Missouri. He claims that at the time of his arrest, he was "assaulted," although plaintiff does not provide any factual information relative to the purported "assault," such as what exactly occurred or which defendant allegedly "assaulted" him and if he suffered injuries at the time of his arrest. He merely states he had "damage to face" without stating more.

Plaintiff asserts that a federal supervised release revocation warrant had been issued for his arrest on March 14, 2017, and he believes that instead of being taken into state custody and held there, he should have immediately been taken into federal custody after his arrest on March 16, 2017. He claims that he was not taken into federal custody for his supervised release revocation violation until January 28, 2020, and he did not have a bond hearing on that violation until January 31, 2020.

---

[1] Plaintiff does not provide any identifying information regarding these "Unknown Employees" at the St. Charles Department of Corrections or how they purportedly violated his civil rights. To that extent, they are subject to dismissal. *See infra.*

Plaintiff alleges that as soon as he was taken into custody at the St. Charles Department of Corrections on March 16, 2017, he was told he was being detained on the supervised release revocation warrant. Thus, he was not immediately charged with any state offenses or arraigned in state court. He claims his custody status was eventually changed to state custody after being charged with state offenses and arraigned with state charges. Plaintiff believes that defendants falsely imprisoned him, "maliciously prosecuted him," and that the state court lacked jurisdiction over the three cases under which he was eventually convicted because of the false imprisonment.

Plaintiff seeks to overturn his convictions in state court, as well as compensatory and punitive damages.

### Plaintiff's Criminal Background in Federal Court

On January 29, 2010, in front of the Honorable Henry Edward Autrey, plaintiff plead guilty to possession of pseudoephedrine with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1) and punishable under 21 U.S.C. § 841(c). *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo). On April 27, 2010, the Court sentenced movant to a total term of 87 months' imprisonment and two years of supervised release. *Id.*

Supervision of plaintiff commenced on July 1, 2015. On January 15, 2016, a report was filed by his United States Probation Officer requesting that his substance abuse counseling condition be suspended. It was reported that plaintiff had successfully completed the Residential Drug Abuse Program during his incarceration, and he had, since his release from confinement, continued to maintain full-time employment, negative urine specimens (for illicit substances), and attended monthly Narcotics Anonymous groups. Thus, on that date, the condition that plaintiff attend substance abuse counseling was suspended. *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo).

On January 19, 2017, plaintiff's United States Probation Officer reported that plaintiff had

violated his supervised release conditions by using methamphetamine. The Officer stated in his

report:

> On January 7, 2017, this officer was contacted by the offender who indicated on
> January 6, 2017, his girlfriend Marivic Basas had died while they were using
> methamphetamine. The offender indicated they both had been using
> methamphetamine for two days. On the second day he woke up next to his girlfriend
> and observed she was not breathing. The offender called 911; emergency first
> responders responded to the call but were unable to revive Basas. The offender
> admitted that he had used methamphetamine on one previous occasion. This officer
> contacted the St. Charles County Sheriff's Department detective who handled this
> case and the investigation. The detective confirmed this information and indicated
> it did not appear the offender would be charged with any wrongdoing.
>
> Based on the offender's mental state related to the trauma of his girlfriend dying,
> and his relapse with controlled substances, it is requested a modification for mental
> health treatment be granted.

*Id.* Plaintiff's Probation Officer additionally recommended having plaintiff attend one individual

integrated substance abuse/mental health counseling meeting a week and participate in random

urine testing. Plaintiff agreed to the proposed modifications and waived a hearing on the modified

conditions. The Court ordered the change in conditions. *Id.*

On March 14, 2017, the United States Probation Officer in charge of plaintiff's supervision

recommended issuing a warrant for plaintiff's arrest for three violations of the terms of his

supervised release. The Officer stated:

> On January 7, 2017, this officer was contacted by the offender who indicated on
> January 6, 2017, his girlfriend Marivic Basas had died while they were using
> methamphetamine. The offender indicated they both had been using
> methamphetamine for two days. On the second day, he woke up next to his
> girlfriend and observed she was not breathing. First Responders responded to the
> call but were unable to revive Basas. The offender admitted he had used
> methamphetamine on one previous occasion.
>
> According to St. Charles County Detectives this is still an open death investigation
> and they are currently unable to provide any further information. As a result of this
> violation, the offender was provided with integrated treatment for dual disorders.

On March 13, 2017, this officer made contact with the offender at the Wentzville Police Department. During this meeting, the offender admitted to continued use of methamphetamine. In addition, a glass vial of clear fluid was located in the offender's vehicle. When questioned about this vial, the offender indicated it was steroids that he had been using. The offender indicated he no longer uses this drug.

On March 12, 2017, this officer attempted to make contact with the offender at his sister's residence, which was his reported address. The offender's sister indicated she had kicked the offender out of the residence due to erratic behavior. She indicated that she did not know where the offender was residing; however, she would try and get the offender to call this officer.

On March 13, 2017, this officer met with the offender at the Wentzville Police Department. The offender indicated he had met a girl at the casino and has been staying at her house. The offender was unable to provide an address of this location. When asked where he was staying this evening, the offender indicated he would be staying at a hotel. The offender did not know which hotel he would be staying.

When interviewed about this violation, the offender indicated that he had been staying at different locations with people that he has met. The offender indicated he was unable to provide any of these addresses. The offender did not provide a reason for not responding to messages left by this officer. As the offender is unable to provide a permanent address, this officer is unable to locate the offender when needed.

The offender admitted that he has been using methamphetamine with friends for the last two months. In addition, the offender indicated he has not used in the last two weeks.

*United States v. Wolf*, No. 4:09CR707 HEA (E.D.Mo). On March 14, 2017, the District Court

issued a warrant for plaintiff's arrest.

On January 10, 2020, the United States Probation Officer in charge of plaintiff's

supervision filed a first amended petition for warrant or summons for offender under supervision.

The Probation Officer sought a new warrant for plaintiff's arrest based on the culmination of

plaintiff's criminal history in state court:

According to St. Charles County Circuit Court records, a probable cause statement was presented to the prosecuting attorney's office advising the offender, on or about January 6, 2017, knowingly caused the death of his 39 year old girlfriend by means of blunt force resulting in closed head trauma. The offender was the only person with the victim after 8:00pm on January 5, 2017. The victim's 16 year old daughter, last saw her eating dinner. The victim's 18 year old son, heard yelling and "loud thumps" between 1:00am and 4:00am, coming from the victim's, and the offender's

room. The offender indicated he had an argument with the victim the evening of January 5, 2017. The offender and the victim's children admitted the relationship between them was volatile and they argued daily. The offender admitted that he used methamphetamine and steroids. A liquid steroid was seized from the master bathroom adjoining the offender's bedroom on January 6, 2017.

On April 3, 2018, the offender pled guilty to Involuntary Manslaughter on an Alford Plea. The St. Charles County Circuit Court case number is 1711-CR01215-01. The offender was sentenced to 7 years in Missouri Department of Corrections to run consecutively with docket numbers 1711-CR01319-01 and 1711-CR02748-01.

The warrant was executed on January 10, 2020, and on January 15, 2020, an order for application for writ of habeas corpus ad prosequendum was filed seeking to remove plaintiff from Ozark Correctional Center in order to appear in the District Court.

Plaintiff was charged with the following supervised release violations: (1) committing a federal, state, or local crime; (2) unlawfully possessing a controlled substance; (3) use of a controlled substance; (3) failure to submit to a drug test; (4) failure to refrain from use of alcohol and failure to purchase or distribute any controlled substances; (5) failure to notify his probation officer at least ten days prior to change in residence or employment; and (6) failure to refrain from associating with persons engaged in criminal activity. He plead guilty to charges (1-3) on February 6, 2020 and was sentenced to time served. *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo). Plaintiff was then returned to the custody of the State of Missouri.

**Plaintiff's Criminal Background in the State of Missouri**

On April 5, 2017, a complaint was filed against plaintiff in St. Charles County Court charging plaintiff with murder in the second degree and possession of a controlled substance. *State v. Wolf,* No. 1711-CR01215 (11th Judicial Circuit, St. Charles County Court). The complaint was based on a probable cause statement filed by Detective Mikki Morris, with the St. Charles County Police Department, which stated:

> On or about 1/06/2017 at 35 Hickory Ln, O'Fallon, MO 63366 in St. Charles County, MO Timothy M. Wolf, Jr. did knowingly cause the death of M.B., his 39 year old girlfriend, by means of blunt force resulting in closed head trauma.

As documented in the medical examiner's report. Timothy M. Wolf, Jr. was the only person with M. B. after 8:00 pm., 01-05-2017, when M.B.'s 16 year old daughter, M.V.C., last saw her eating dinner, until 10:06 a.m., 01-06-2017, when paramedics arrived on scene. M.A.C., M.B.'s 18 year old son, heard yelling and "loud thumps" between 1:00 a.m.-4:00 a.m. 01-06-2017 coming from Timothy M. Wolf, Jr. and M.B.'s bedroom. Timothy M. Wolf, Jr. told law enforcement, he and M.B. had an argument the evening of 01-05-2017.

Timothy M. Wolf, Jr., as well as M.B.'s children, admit the relationship between him and M.B. was volatile and they argued daily.

Timothy, M. Wolf, Jr. is an admitted and known methamphetamine and steroid user. The liquid steroid was seized from the master bathroom adjoining Timothy M. Wolf, Jr.'s bedroom 01-06-2017.

The lab report confirmed the substance to be: Methyldienolone.

I have reasonable grounds to believe that the defendant will not appear upon the summons or is a danger to the crime victim, the community or any other person because:

Timothy M. Wolf, Jr. has an extensive criminal history mostly for methamphetamine possession, distribution, and possession of methamphetamine precursors. He is currently incarcerated on a Probation Violation warrant. We are also awaiting lab results for an additional steroids charge. P&P is also considering additional violation charges.

*State v. Wolf*, No. 1711-CR01215 (11th Judicial Circuit, St. Charles County Court).

Plaintiff was sentenced to seven (7) years in the Missouri Department of Corrections on April 3, 2018, after making an Alford plea to the charge of manslaughter. *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court). His sentence of imprisonment was to run consecutively with the sentences imposed in *State v. Wolf*, No. 1711-CR01319-01 (11th Judicial Circuit, St. Charles County Court) and *State v. Wolf*, No. 1711-CR02748-01 (11th Judicial Circuit, St. Charles County Court).

On April 10, 2017, a complaint was filed against plaintiff for possession of a controlled substance. *State v. Wolf*, No. 1711-01319 (11th Judicial Circuit, St. Charles County Court). The

complaint was based on a probable cause statement filed by Sergeant Marshall, with the St. Charles County Police Department, which stated:

> On or about 03/13/2017 at 1019 Schroeder Parkway, Wentzville, MO in St. Charles County, MO, in the county of St. Charles, Wolf knowingly and unlawfully possessed Testosterone, a Schedule 3 controlled substance.
>
> Upon Wolf arriving for a meeting with his federal probation officer, TC, TC searched Wolf's vehicle which is a condition of Wolf's parole. The vehicle searched was Wolf's and there was no one else in the vehicle at the time of occurrence. When asked about the substance by TC, Wolf stated "it's Testosterone". TC advised this detective Wolf has no legal justification for possessing this controlled substance.
>
> The lab report confirmed the substance to be Testosterone.

*State v. Wolf*, No. 1711-01319 (11th Judicial Circuit, St. Charles County Court). Plaintiff plead guilty on April 3, 2018, to possession of a controlled substance and was sentenced to six (7) years in the Missouri Department of Corrections to be served consecutive with the sentence imposed in *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court) and concurrent with the sentenced imposed in *State v. Wolf*, No. 1711-CR02748-01 (11th Judicial Circuit, St. Charles County Court).

On August 14, 2017, a complaint was filed against plaintiff for felony stealing. *State v. Wolf*, No. 1711-CR02748 (11th Judicial Circuit, St. Charles County Court). The complaint was based on a probable cause statement filed by Zac Jenkins, an Investigator with the Special Investigations Criminal Unit of the Missouri Division of Employment Security, which stated:

> 1. I have probable cause to believe that from 03/04/17 through 03/25/17, Timothy Merle Wolf Jr. committed one or more criminal offenses, to wit the Class D felony of Stealing by Deceit in violation of Section 570.030, R.S.Mo. Mr. Wolf is a white male, born on. . .and is 5'8 tall weighing 170 pounds with BLU eyes. Mr. Wolf committed this crime while living at 35 Hickory Lane, O'Fallon, MO 63366.
>
> 2. Timothy Merle Wolf applied for and received unemployment insurance (UI) benefits while working for Superior Wreck Rebuilders. AT&T phone records for Wolf's telephone number (636) 219-8355 confim that Wolf accessed the Missouri Division of Employment Security (MODES) Interactive Voice Response (IVR)

system via telephone for the week ending 03/04/ 17. According to Superior Wreck Rebuilders Wolf had worked 18.25 hours and earned gross wages totaling $182.00 for work he performed that week. Per MODES records when certifying his weekly claim for benefits Wolf reported to MODES that he had been unemployed the week ending 03/04/17 and had no earnings to report. Central Bank records confirm that Wolf subsequently received an additional $119.00 in UI benefits was not lawfully entitled. Wolf received his UI benefits onto Missouri Access MasterCard ending 9449 by Central Bank.

3. After becoming incarcerated in the St. Charles County Correctional Facility on 03/16/17, Wolf and his sister Tathany Ann Fritz, are heard on recorded telephone calls from the St. Charles County Correctional Facility conspiring together to unlawfully obtain UI benefits while Wolf remained in custody. With Wolf's permission Fritz used Wolf' personal identifying information (PII) including name, social security number, date of birth and personal identification number (PIN) to access Wolf's UI claim by telephone via the Interactive Voice Response (IVR) system. Sprint phone records for Fritz's telephone number (636-312-1226) confirm and by using Wolf's PII, Fritz accessed the MODES IVR system via telephone and filed two weekly UI claims for the weeks ending 03/18/17 & 03/25/17. When certifying the weekly claim for benefits Fritz certified that Wolf was able, available and searching for full-time work while he was incarcerated. Per Central Bank records Wolf and Fritz subsequently received additional UI benefits to which they were not lawfully entitled totaling $640.00. All UI funds were loaded onto Wolf's Missouri Access MasterCard ending 9449 by Central Bank.

4. The culmination of Wolf failing to report his gross weekly earnings for the week ending 03/04/17 by purporting that he was unemployed when in fact he had been working and the weekly certifications he conspired with Fritz to file weekly claims by certifying that he was able and available for work while incarcerated caused Wolf to unlawfully receive additional UI benefits that he was not lawfully entitled totaling $759.00.

5. During a face-to-face interview with Wolf on 05/26/17, at approximately 10:36 hours, after being advised of his Miranda Rights Wolf said he did not know if anyone had been filing weekly UI claims while he had been incarcerated. Wolf said he would look into it and get back to me. Wolf did not speak of any work he had done at Superior Wreck Rebuilders.

*State v. Wolf*, No. 1711-CR02748 (11th Judicial Circuit, St. Charles County Court). Plaintiff plead guilty on April 3, 2018, to possession of a controlled substance and was sentenced to seven (7) years in the Missouri Department of Corrections to be served concurrent with the sentences imposed in *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court) and *State v. Wolf*, No. 1711-CR01319-01 (11th Judicial Circuit, St. Charles County Court).

- 10 -

On October 23, 2020, plaintiff filed a post-conviction motion to vacate his sentences entered in Case Nos. 1711-CR-1215-01, 1319-01 and 02748-01. *Wolf v. State*, No. 2011-CC-1061 (11ᵗʰ Judicial Circuit, St. Charles County Court). The Court initially denied plaintiff's *pro se* motion to vacate on November 25, 2020, and plaintiff immediately filed an appeal of the denial. However, on November 25, 2020, the Missouri Public Defender's Office entered their appearance on behalf of plaintiff and sought reconsideration of the motion to vacate. The motion to reconsider is set for hearing on March 15, 2021. *Id.* The appeal of the denial of the motion to vacate is currently awaiting ruling of the motion for reconsideration. *See Wolf v. State of Missouri,* No. ED109326 (Mo.Ct.App. 2020).

Plaintiff's arguments in his motion to vacate mirror those brought in the present action.

## Discussion

Plaintiff's claims have been somewhat difficult to discern in this action, but after reading his complaint, as well as his post-conviction motions filed in his state criminal actions, it is clear that he is attempting to overturn his convictions in state court, in addition to collecting damages, by claiming that the state court unlawfully held him between the time of his arrest on March 16, 2017 and the time he was charged with state court violations on April 5, 2017.[2]

He is essentially asserting that because the St. Charles County deputies arrested him on a warrant for a federal supervised release violation, his state court convictions in 2018 were entered

---

[2]The first sovereign to take physical custody of a defendant retains "primary jurisdiction" until releasing that jurisdiction. *See United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence." *Id.* It appears that Missouri state court had primary jurisdiction over plaintiff when it took him into custody on March 16, 2017. At that time, he remained in the state's custody until he was taken by writ into the custody of the federal government to be prosecuted for his supervised release revocation on or about January 15, 2020, pursuant to the writ of habeas corpus ad prosequendum. Yet, even the transfer of physical control over petitioner's custody did not terminate Missouri's primary jurisdiction over petitioner. *See United States v. Hayes,* 535 F.3d 907, 909-10 (8th Cir. 2008) (federal sentence did not commence during or after the period of writ of habeas corpus prosequendum but rather after service of state sentence).

without jurisdiction, because he believes that he should have been transferred to federal custody immediately upon his arrest. He claims that he was unlawfully imprisoned by defendants for the time period between March 16, 2017 and April 5, 2017, at which time he was formally charged with murder in the second degree. However, he brings his claims against defendants in their official capacities only.

Naming a government official in his or her official capacity in the equivalent of naming the government entity that employs him or her, which in this case is St. Charles County. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The complaint does not state a claim of municipal liability. "[I]t is well established 'that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor.'" *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (*quoting Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013)). Liability under § 1983 may attach to a municipality if the constitutional violation resulted from: (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Here, the complaint contains no non-conclusory allegations tending to show a direct causal link between any official municipal policy or unofficial custom of St. Charles County and the alleged constitutional violations, nor are there any non-conclusory allegations of a failure to train or supervise. While a *pro se* pleading is to be liberally construed, it still must allege specific facts which, if proven true, would entitle the plaintiff to some legal relief against the named defendant(s) under some cognizable legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). "Threadbare recitations of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009. Thus, plaintiff's claims against defendants must be dismissed.

Even if plaintiff had brought claims against defendants in their individual capacities, his claims would still be subject to dismissal. Plaintiff fails to allege how each defendant was personally involved in or directly responsible for the alleged constitutional violations. Instead, plaintiff merely lists their names in the complaint and then states that "defendants" collectively violated his rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

The Court, for example, must point out that although plaintiff states that he was "assaulted," he has not stated what kind of assault he was subjected to or which of the defendants allegedly "assaulted" him. Additionally, he has failed to provide any facts relating to the alleged assault, except to state in a conclusory manner that he had damage to his face. Unfortunately this is not enough to state a claim under 42 U.S.C. § 1983.

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

"However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to affect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

As plaintiff has failed to provide any factual underpinnings relative to his claim for "assault," the Court cannot find that his claim for force was excessive in light of the circumstances provided.

Similarly, plaintiff has not properly brought a case for malicious prosecution against the Unknown Prosecutor in this action. Plaintiff's conclusory statement that he was subject to "malicious prosecution" is not enough to substantiate a claim for relief in this case. Additionally, the doctrine of prosecutorial immunity bars plaintiff's claims against a prosecutor because it is well established that prosecutors have absolute immunity from claims for damages for acts performed within their official authority. *See Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987).

"Prosecutors are protected by absolute immunity from civil liability under § 1983 for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-71 (1993); *see also Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government.").

Prosecutorial immunity also applies to officials who perform prosecutorial functions such as initiating administrative or quasi-criminal proceedings. *See, e.g., Butz v. Economou*, 438 U.S.

478, 515 (1978); *see also Smith v. Power,* 346 F.3d 740 (7th Cir. 2003) (assistant city attorney who initiated proceedings to demolish a building under the city building code is entitled to prosecutorial immunity). When an attorney is absolutely immune from liability for prosecuting an individual, that attorney cannot be held liable for conspiring to violate that individual's constitutional rights. *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579-80 (8th Cir. 2006).

There is no question that all of the prosecutors who filed charges against plaintiff in his state and federal court actions are entitled to prosecutorial immunity. Plaintiff's "[a]llegations of improper motive in the performance of prosecutorial functions will not defeat immunity." *Powers v. City of Ferguson*, 229 F. Supp. 3d 894, 899 (E.D. Mo. Jan. 17, 2017). Moreover, "[p]ublic policy dictates that prosecutors be immune from common-law suits for malicious prosecution." *Jackson v. Tyson*, 2008 WL 5377877, at *4 (E.D. Mo. Dec. 19, 2008) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 422 (1976)). Without absolute immunity, the threat of civil rights suits would undermine the performance of a prosecutor's duties. *Id.*

Additionally, plaintiff's assertions regarding his unlawful detention, alleged false imprisonment and malicious prosecution in violation of the Fourth Amendment are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). There, the Supreme Court held that a plaintiff may not recover damages in a § 1983 suit where a judgment in his favor would necessarily imply the invalidity of his conviction or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Heck,* 512 U.S. at 486-87; *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* rule in a § 1983 suit seeking declaratory relief); *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (according to *Heck*, if a criminal conviction arising from the same facts still stands and is fundamentally inconsistent with the conduct for which § 1983 damages are sought, the § 1983 action must be dismissed).

Here, plaintiff does not assert that his criminal convictions have been set aside or otherwise held invalid. In fact, as shown *supra*, plaintiff's post-conviction proceedings are still ongoing.

Plaintiff's claims here arise from the same facts as his criminal convictions, and address the validity of his arrest, related criminal proceedings, and convictions. If plaintiff's detention was illegal it could undermine the validity of his conviction. This result is impossible under *Heck. See Anderson v. Franklin County, Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999) (section 1983 claims of false arrest and false imprisonment should be dismissed as Heck-barred).

Last, plaintiff's assertions that he is entitled to release from confinement are more properly brought in habeas corpus, pursuant to 28 U.S.C. § 2254. As plaintiff is still exhausting his state remedies with respect to his post-conviction relief claims in his state criminal proceedings, his claims for habeas corpus are not yet cognizable.

Given the aforementioned, plaintiff's claims for relief must be denied. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $33.67 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion for subpoena [Doc. #7] is **DENIED AS MOOT**.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 83rd day of February, 2021.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE